[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Apanovitch,* Slip Opinion No. 2018-Ohio-4744.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4744

THE STATE OF OHIO, APPELLANT, *v*. APANOVITCH, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Apanovitch,* Slip Opinion No. 2018-Ohio-4744.]

*Criminal Law—Postconviction DNA testing—R.C. 2953.21 and 2953.23(A)—Trial court lacked subject-matter jurisdiction to entertain untimely and successive petition for postconviction relief when requirements of R.C. 2953.23(A) were not satisfied—Judgment vacated and cause remanded.*

(No. 2016-0696—Submitted June 26, 2018—Decided November 29, 2018.)

APPEAL from the Court of Appeals for Cuyahoga County,

Nos. 102618 and 102698, 2016-Ohio-2831.

_____

FISCHER, J.

{¶ 1} Appellee, Anthony Apanovitch, was convicted of aggravated murder, aggravated burglary, and two counts of rape, and, in January 1985, he was sentenced to death. The body of the victim, Mary Anne Flynn, was found in a

bedroom in her home. She had been strangled and severely beaten, and sperm was found in her mouth and vagina.

{¶ 2} On direct appeal, the Eighth District Court of Appeals and this court affirmed Apanovitch's convictions and death sentence. *State v. Apanovitch*, 8th Dist. Cuyahoga No. 49772, 1986 Ohio App. LEXIS 8046 (Aug. 28, 1986); *State v. Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d 394 (1987). Apanovitch unsuccessfully pursued a number of avenues for relief, including filing three state postconviction petitions, *State v. Apanovitch*, 70 Ohio App.3d 758, 591 N.E.2d 1374 (8th Dist.1991); *State v. Apanovitch*, 107 Ohio App.3d 82, 667 N.E.2d 1041 (8th Dist.1995); *State v. Apanovitch*, 113 Ohio App.3d 591, 681 N.E.2d 961 (8th Dist.1996), and a federal habeas corpus action, *see Apanovitch v. Houk*, N.D.Ohio No. 1:91CV2221, 2009 U.S. Dist. LEXIS 103985 (Aug. 14, 2009), *aff'd sub nom. Apanovitch v. Bobby*, 648 F.3d 434 (6th Cir.2011).

{¶ 3} This appeal involves Apanovitch's fourth postconviction petition, in which he asserted claims in the Cuyahoga County Court of Common Pleas based on DNA testing done on specimens taken from Flynn's vagina. After an evidentiary hearing, the court acquitted Apanovitch of vaginal rape. It then dismissed the other, identically worded rape charge and granted Apanovitch a new trial on the remaining aggravated-murder and aggravated-burglary counts. The Eighth District Court of Appeals affirmed. 2016-Ohio-2831, 64 N.E.3d 429.

{¶ 4} We accepted review of three of the state's propositions of law. We do not reach those propositions, however, because the General Assembly has not authorized a court of common pleas to exercise jurisdiction over a petition for postconviction relief in the circumstances presented in this case. As a result, because the trial court lacked subject-matter jurisdiction to grant the petition for postconviction relief, the trial court's judgment (and, in turn, the court of appeals' judgment) must be vacated. We remand this matter for proceedings consistent with this opinion.

## I. BACKGROUND

### A. Investigation, trial, and direct appeals

{¶ 5} Mary Anne Flynn arrived home on August 23, 1984, at about 10:00 p.m. She owned the house—a duplex—and rented out the other unit. The people in the other unit that night heard Flynn's front door slam soon after she arrived, and they heard more noises (a loud thud and a high-pitched sound) from Flynn's unit between 11:30 p.m. and midnight. No witnesses saw or heard anything after that.

{¶ 6} When Flynn, a nurse, failed to report for her shift at a nearby hospital the next afternoon, a concerned coworker called Flynn's brother. They accessed Flynn's unit that evening and discovered Flynn's body in her bedroom. She was lying face down, naked on the bed with her hands tied behind her back. A bedsheet had been rolled up and was tied around her neck and to the headboard. She had been severely beaten, apparently with a piece of wood broken from a basement windowsill. An autopsy revealed sperm in her mouth and vagina. She had died from asphyxia by cervical compression, i.e., strangulation.

{¶ 7} Soon after the murder, investigators focused on Apanovitch, whom Flynn had hired earlier that summer to paint part of the exterior of her house. Circumstantial evidence suggested that he could be the murderer: There was evidence that Flynn had argued with a man she had hired to paint her house and that Flynn had ended the painting arrangement before the work was finished. Several witnesses testified that Flynn was fearful of a man who had done some painting at her house and one of those witnesses identified Apanovitch as the person Flynn feared. There was evidence that Apanovitch had approached Flynn outside of her home the afternoon before the murder asking to paint her windowsills. Following that interaction, Apanovitch apparently made sexually suggestive comments about Flynn to a coworker. Also, Apanovitch could not satisfactorily account for his whereabouts or for a scratch that he had received on his face the night of the murder. Finally,

based on his blood type, Apanovitch could not be excluded as the source of sperm recovered from Flynn's body.

{¶ 8} Apanovitch was charged with aggravated murder, aggravated burglary, and two counts of rape. The rape counts were identical, both alleging that Apanovitch "unlawfully and purposely engaged in sexual conduct with Mary Anne Flynn not his spouse by purposely compeling [sic] her to submit by the use of force or threat of force."

{¶ 9} After a jury found Apanovitch guilty on all counts, it recommended a death sentence, which the trial court imposed. The court of appeals and this court affirmed the convictions and death sentence.

## B. DNA evidence and testing

{¶ 10} When conducting Flynn's autopsy, a forensic pathologist with the Cuyahoga County Coroner's office[1] created slides that contained specimens obtained from Flynn's mouth and vagina. DNA testing of the specimens was not available at the time of trial in 1984.

{¶ 11} In 1988, one of Apanovitch's attorneys asked the coroner's office for records related to Flynn's death. At that time, the slides could not be located, and it was assumed that they had been lost or destroyed. But in 1991, three slides related to Flynn's case (one vaginal slide and two oral slides) were located.[2]

{¶ 12} In 1991, the coroner's office sent the slides to Forensic Science Associates ("FSA") in California for DNA testing. Due to the condition of the samples, FSA determined that it could not analyze two of the slides (the vaginal slide and one oral slide), but it was able to determine a partial DNA type of the

---

[1] The county official formerly known as the Cuyahoga County Coroner is now known as the Cuyahoga County Medical Examiner. *See* Cuyahoga County Charter, Section 5.03, effective January 1, 2010.
[2] During habeas review, the federal district court found that the chain of custody of those slides had not been broken. *Apanovitch v. Houk*, 2009 U.S. Dist. LEXIS 103985 at *24.

other oral slide (referred to by FSA as "Item 2"). A sample of Apanovitch's DNA was not available to FSA at that time for comparison.

{¶ 13} In 2000, an assistant Cuyahoga County prosecuting attorney asked the Cuyahoga County Coroner to conduct DNA testing on "any trace evidence or samples" related to Flynn's murder. The assistant prosecutor's letter said, "It is the intention of this request that the identity of the donor of sperm found in the victim, Mary Ann [sic] Flynn, be established to the degree of scientific certainty available." By that time, FSA had returned the vaginal and oral slides to the coroner's office. The coroner's office tested the slides in late 2000 but concluded that there was not sufficient material left on them to obtain a clear DNA profile.

{¶ 14} In 2006, for reasons that are not clear from the record, FSA further analyzed DNA from its Item 2, the specimen from Flynn's mouth, which it had retained and stored frozen in its DNA archive. This time, FSA developed a more complete male DNA profile that occurs in about 1 in 285 million Caucasian males. In 2007, the federal district court in Apanovitch's habeas case ordered Apanovitch, a Caucasian male, to provide a sample of his DNA for comparison. After analyzing that sample, FSA concluded that Apanovitch could not be eliminated as the source of the sperm taken from Flynn's mouth. Apanovitch contests that finding, arguing that FSA's report is unreliable.

### C. Apanovitch's fourth postconviction petition

{¶ 15} In 2012, Apanovitch filed his fourth postconviction petition, focusing on the coroner's office's 2000 test of a specimen taken from Flynn's vagina. At the postconviction hearing, Dr. Rick Staub, Apanovitch's expert, testified about his review of the results of the testing of that specimen. Unlike the coroner's office, Dr. Staub concluded that a sample from the vaginal slide had provided useful results. In his opinion, the testing showed that Apanovitch's sperm was not on that slide, but the DNA of at least two other unknown males was on the slide; Apanovitch, therefore, was excluded as a contributor of the sperm. The

state's expert at the postconviction hearing, Dr. Elizabeth Benzinger, testified that the vaginal sample contained a low level of DNA and could have been contaminated, but she did not testify as to whether Apanovitch was excluded as a contributor of the sperm.

{¶ 16} Because Dr. Benzinger did not contradict Dr. Staub's opinion that Apanovitch was excluded as a contributor to the vaginal sample, the trial court acquitted Apanovitch on the vaginal-rape charge. The trial court also dismissed the other rape charge with prejudice "for its lack of specificity or differentiation from the other count in violation of [Apanovitch's] due process rights." Based on the changes regarding the evidence and to the charges, the trial court granted Apanovitch a new trial on the remaining aggravated-murder and aggravated-burglary counts.

{¶ 17} In reaching its decision, the trial court found that "there was insufficient material to reach any conclusion whether [Apanovitch's] DNA was contained in the materials recovered from the victim's mouth." Because evidence of the 2007 report from FSA was not presented at the postconviction hearing, the trial court did not consider FSA's finding in that report that only 1 in 285 million Caucasians have the same DNA profile as Apanovitch and the sperm found in Flynn's mouth. The trial court noted that the state had stipulated prior to the postconviction hearing that it would not rely on any evidence generated by Dr. Edward Blake, the author of that report, who did not testify at the hearing.

{¶ 18} On the state's appeal, the court of appeals held that the trial court did not abuse its discretion in finding Apanovitch actually innocent of vaginal rape. 2016-Ohio-2831, 64 N.E.3d 429, at ¶ 46. It also affirmed the trial court's dismissal of the second rape charge. *Id*. at ¶ 55, 61. The state did not assert an assignment of error concerning the trial court's decision granting a new trial.

**{¶ 19}** The state appealed to this court, and we accepted review of three of the state's propositions of law.[3]  150 Ohio St.3d 1407, 2017-Ohio-6964, 78 N.E.3d 908.

## II. ANALYSIS

**{¶ 20}** Upon our review of the record, we ordered supplemental briefing on three issues that centered on whether the trial court had lacked jurisdiction to consider Apanovitch's petition for postconviction relief.  152 Ohio St.3d 1439, 2018-Ohio-1600, 96 N.E.3d 296.  The jurisdictional questions we raised in that order relate to the statutory scheme by which the General Assembly has authorized offenders to pursue postconviction relief in Ohio courts.

**{¶ 21}** When Apanovitch filed his petition in 2012, the statutory deadline for filing a timely postconviction petition had long since passed.  *See* former R.C. 2953.21(A)(2), 2010 Sub.S.B. No. 77.  Moreover, R.C. 2953.23(A) allows a prisoner to file only one postconviction petition in most situations.  The current petition is Apanovitch's fourth postconviction petition.  Apanovitch's petition, therefore, was both untimely and successive.

**{¶ 22}** However, R.C. 2953.23(A) permits a prisoner to file an untimely, successive petition for postconviction relief only under specific, limited circumstances.  R.C. 2953.23 provides:

> (A) Whether a hearing is or is not held on a petition filed
> pursuant to section 2953.21 of the Revised Code, a court may not
> entertain a petition filed after the expiration of the period prescribed
> in division (A) of that section or a second petition or successive

---

[3] Apanovitch moves to strike a portion of the state's brief, arguing that it is beyond the scope of this discretionary appeal.  Because we are capable of deciding the issues properly before us without striking arguments, *see State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 11, we deny the motion.

petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(2) The petitioner was convicted of a felony, the petitioner is an offender for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating

circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.

As used in this division, "actual innocence" has the same meaning as in division (A)(1)(b) of section 2953.21 of the Revised Code, and "former section 2953.82 of the Revised Code" has the same meaning as in division (A)(1)(c) of section 2953.21 of the Revised Code.

Thus, R.C. 2953.23(A) is the limited gateway through which only those otherwise-defaulted postconviction claims that meet its specific terms may proceed.

{¶ 23} We must decide three questions: First, does the postconviction petition satisfy an exception provided in R.C. 2953.23(A)? Second, if no exception applies, did the trial court lack jurisdiction to adjudicate the petition? And third, if the trial court lacked jurisdiction to adjudicate the petition, how should we resolve this appeal?

**A. The petition does not satisfy R.C. 2953.23(A)**

{¶ 24} The trial court found that Apanovitch's postconviction petition satisfies R.C. 2953.23(A)(2). Apanovitch argues that we must defer to that determination absent an abuse of discretion. But "the question whether a court of common pleas possesses subject-matter jurisdiction to entertain an untimely petition for postconviction relief is a question of law, which appellate courts review de novo." *State v. Kane*, 10th Dist. Franklin No. 16AP-781, 2017-Ohio-7838, ¶ 9.

{¶ 25} We begin by examining R.C. 2953.23(A)(1). That exception would allow the trial court to consider Apanovitch's untimely and successive petition if (1) Apanovitch was "unavoidably prevented from discovery of the facts" upon which his claim relies *or* he is asserting a claim based on a new, retroactively applicable federal or state right recognized by the U.S. Supreme Court after his petition became untimely and after he had filed earlier petitions, R.C. 2953.23(A)(1)(a), *and*

(2) he shows by clear and convincing evidence that no reasonable factfinder would have found him guilty or eligible for the death sentence but for "constitutional error at trial," R.C. 2953.23(A)(1)(b).

{¶ 26} We need not address whether Apanovitch satisfies R.C. 2953.23(A)(1)(a), because he clearly has not satisfied R.C. 2953.23(A)(1)(b), which requires him to show that his conviction resulted from "constitutional error at trial." In arguing that he satisfied R.C. 2953.23(A)(1)(b), Apanovitch asserts only that he is actually innocent of a rape charge. The United States Supreme Court has ruled that under the United States Constitution, an actual-innocence claim "is not itself a constitutional claim," *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), and this case, therefore, does not involve a "constitutional error at trial" under R.C. 2953.23(A)(1)(b). *See State v. Willis*, 2016-Ohio-335, 58 N.E.3d 515, ¶ 15-19 (6th Dist.). Additionally, Apanovitch does not raise any argument that there was a "constitutional error at trial" under the Ohio Constitution. Apanovitch's petition, therefore, does not qualify under R.C. 2953.23(A)(1).

{¶ 27} That leaves R.C. 2953.23(A)(2), which allows a trial court to entertain an untimely and successive petition filed by

> an offender for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code.

{¶ 28} The trial court construed this language broadly, stating that a postconviction petition "is timely when it *involves the testing of DNA*." (Emphasis

10

added.) The trial court appears to have assumed that Apanovitch satisfied R.C. 2953.23(A)(2) simply because he was making a claim based on DNA evidence.

{¶ 29} The statutory language of R.C. 2953.23(A)(2), however, is more circumscribed. It confers jurisdiction over a select class of DNA-based actual-innocence claims—only those arising from an eligible offender's application for DNA testing under R.C. 2953.71 to 2953.81 or under former R.C. 2953.82. The state asserts—and Apanovitch does not dispute—that the DNA testing at issue here was not performed as a result of a request by Apanovitch under R.C. 2953.71 to 2953.81 or under former R.C. 2953.82. The parties agree that *the state* asked the Cuyahoga County Coroner to test the vaginal slide and that at *the state's request* the federal district court ordered Apanovitch to provide his DNA for comparison. Thus, Apanovitch's petition does not satisfy the plain language of R.C. 2953.23(A)(2).

{¶ 30} Apanovitch nevertheless argues that his petition qualifies under R.C. 2953.23(A)(2), first by claiming that he requested DNA testing in 1989. This argument does not help Apanovitch. Even if he sought DNA testing in 1989, he clearly did not do so under R.C. 2953.71 to 2953.81 or under former R.C. 2953.82, because those statutes were not enacted until 2003. Sub.S.B. No. 11, 150 Ohio Laws, Part IV, 6498, 6507-6524, 6525.

{¶ 31} He also argues that notwithstanding R.C. 2953.23(A)(2)'s clear reference to DNA testing performed under R.C. 2953.71 to 2953.81 or under former R.C. 2953.82, the circumstances under which the DNA was tested are "immaterial." This argument relies principally on R.C. 2953.84, which provides:

> The provisions of sections 2953.71 to 2953.81 of the Revised Code by which an offender may obtain postconviction DNA testing are not the exclusive means by which an offender may obtain postconviction DNA testing, and the provisions of those

sections do not limit or affect any other means by which an offender may obtain postconviction DNA testing.

**{¶ 32}** According to Apanovitch, "DNA testing under R.C. 2953.71 to 2953.81 is not the exclusive means for supporting a petition for postconviction relief," because "requiring petitions to be based solely on DNA testing under those sections would render R.C. 2953.84 superfluous in violation of basic tenets of legislative interpretation." But Apanovitch disregards the clear language of R.C. 2953.84, which speaks only of the "means by which an offender may *obtain postconviction DNA testing*." (Emphasis added.) That statute does not address the means for supporting an untimely and successive postconviction petition based on DNA testing. Only R.C. 2953.23(A)(2) does that. If Apanovitch is correct that R.C. 2953.84 opens the door for untimely and successive postconviction petitions based on *any* DNA testing, then R.C. 2953.23(A)'s reference to DNA testing "performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code" would have no meaning.

**{¶ 33}** Apanovitch also contends that R.C. 2953.23(A)(2) cannot be strictly limited to DNA testing performed under R.C. 2953.71 to 2953.81 or former R.C. 2953.82, because that would lead to harsh and absurd results. This argument presumes that the procedures established by the General Assembly in R.C. 2953.71 to 2953.81 and former R.C. 2953.82 serve no legitimate purpose—something Apanovitch has not shown. At most, he makes an equitable argument based on what has transpired over the last 30 years. But even assuming arguendo that the equities are in his favor, as Apanovitch maintains, his argument cannot overcome the clear requirements established by the General Assembly that give a trial court jurisdiction to entertain petitions for postconviction relief only in certain, limited situations.

**{¶ 34}** Finally, Apanovitch contends that strictly applying R.C. 2953.23(A)(2) would encourage the state to prevent offenders from initiating DNA testing under R.C. 2953.71 to 2953.81. This argument rings hollow because, despite his claims, Apanovitch has not shown that he ever tried to pursue—or that the state prevented him from seeking—DNA testing under the statutory scheme. Indeed, Apanovitch now asserts that he can pursue testing under R.C. 2953.71 to 2953.81, further undermining his argument.

### B. The trial court lacked jurisdiction to adjudicate the petition

**{¶ 35}** We next must decide whether Apanovitch's failure to qualify for an exception under R.C. 2953.23(A) deprived the trial court of jurisdiction over his petition. We start by recognizing that a postconviction proceeding is a collateral civil attack on the judgment, *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999), and that the "right to file a postconviction petition is a statutory right, not a constitutional right," *State v. Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 28. A postconviction petitioner therefore "receives no more rights than those granted by the statute." *Calhoun* at 281. This means that any right to postconviction relief must arise from the statutory scheme enacted by the General Assembly.

**{¶ 36}** That includes the right to have one's claim heard at all: R.C. 2953.23(A) provides that "a court *may not entertain* a petition filed after the expiration of the period prescribed in [R.C. 2953.21(A)] or a second petition or successive petitions for similar relief on behalf of a petitioner *unless*" one of the exceptions in R.C. 2953.23(A) applies. (Emphasis added.) Therefore, a petitioner's failure to satisfy R.C. 2953.23(A) deprives a trial court of jurisdiction to adjudicate the merits of an untimely or successive postconviction petition. Ohio's intermediate appellate courts have all reached the same conclusion. *See, e.g.*, *State v. Beuke*, 130 Ohio App.3d 633, 636, 720 N.E.2d 962 (1st Dist.1998); *State v. Greathouse*, 2d Dist. Montgomery No. 24084, 2011-Ohio-4012, ¶ 12; *State*

*v. Cunningham*, 2016-Ohio-3106, 65 N.E.3d 307, ¶ 13 (3d Dist.); *State v. Damron*, 4th Dist. Ross No. 10CA3158, 2010-Ohio-6459, ¶ 19; *State v. Brown*, 5th Dist. Delaware No. 06-CA-A-10-0076, 2008-Ohio-524, ¶ 20; *State v. Eubank*, 6th Dist. Lucas No. L-07-1302, 2008-Ohio-1296, ¶ 6; *State v. Flower*, 7th Dist. Mahoning No. 14 MA 148, 2015-Ohio-2335, ¶ 14; *State v. Davis*, 8th Dist. Cuyahoga No. 106012, 2018-Ohio-751, ¶ 9; *State v. Harris*, 9th Dist. Lorain No. 03CA008305, 2003-Ohio-7180, ¶ 8; *State v. Martin*, 10th Dist. Franklin No. 05AP-495, 2006-Ohio-4229, ¶ 22; *State v. Noling*, 11th Dist. Portage No. 2007-P-0034, 2008-Ohio-2394, ¶ 37; *State v. Gipson*, 12th Dist. Warren No. CA2001-11-103, 2002-Ohio-4128, ¶ 18.

**{¶ 37}** Apanovitch's arguments for a different result are unpersuasive. He first argues that his failure to meet a statutory exception did not deprive the trial court of subject-matter jurisdiction, because trial courts clearly have subject-matter jurisdiction over postconviction petitions. Relatedly, because he maintains that the trial court was not deprived of subject-matter jurisdiction, he contends that his failure to satisfy R.C. 2953.23(A) is a waivable issue and that the state did, in fact, waive the issue by not raising it on appeal.

**{¶ 38}** Apanovitch has not shown that the trial court had subject-matter jurisdiction over his petition. Subject-matter jurisdiction "connotes the power to hear and decide a case upon its merits." *Morrison v. Steiner*, 32 Ohio St.2d 86, 290 N.E.2d 841 (1972), paragraph one of the syllabus. By providing that a court "may not entertain" an untimely or successive postconviction petition except in limited circumstances, R.C. 2953.23(A) plainly prohibits a court from hearing and deciding on the merits a petition that does not meet one of the exceptions. Thus, R.C. 2953.23(A) did not permit the trial court to exercise jurisdiction over Apanovitch's petition, and the state could not waive the issue. *See State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, ¶ 11 ("Subject-matter jurisdiction cannot be waived and is properly raised by this court sua sponte").

14

**{¶ 39}** Apanovitch next argues that the trial court had an independent basis for exercising jurisdiction—under Crim.R. 33—because the parties stipulated that the trial court would consider the relief requested under that rule in addition to R.C. 2953.21 and 2953.23. The authority to proceed under Crim.R. 33 empowers a court to provide relief only under that rule. Contrary to Apanovitch's argument, Crim.R. 33 did not empower the trial court to "consider and decide the Petition." R.C. 2953.23 provides the only basis upon which the trial court could proceed to decide the postconviction petition.

**{¶ 40}** Finally, Apanovitch argues that the court should just ignore the jurisdictional problem. In support, he points to *Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, and *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, cases in which we examined the merits of postconviction petitions without addressing whether the petitioners had satisfied R.C. 2953.23(A). But now that the jurisdictional question has been briefed and is squarely before us, *Broom* and *Gondor* do not support the notion that we can or should simply disregard it.

**{¶ 41}** We recognize that it may seem unduly formalistic or unfair to foreclose the trial court from considering a postconviction claim that is based on DNA testing that the state itself procured. But it is the prerogative of the General Assembly, not this court, to set the terms by which an offender may pursue postconviction relief. *See Calhoun*, 86 Ohio St.3d. at 281, 714 N.E.2d 905 (postconviction rights are granted by statute); *State v. Smorgala*, 50 Ohio St.3d 222, 223, 553 N.E.2d 672 (1990) (the legislature's valid laws control policy preferences). The legislature in R.C. 2953.23(A) has created a narrow path for an offender to bring an untimely and/or successive postconviction claim based on DNA evidence. Because Apanovitch did not satisfy either of the exceptions provided in R.C. 2953.23(A), the trial court fundamentally lacked jurisdiction to consider his petition or to provide relief under R.C. 2953.21.

**C. We vacate the judgment and remand the cause**

**{¶ 42}** Because we conclude that the trial court lacked subject-matter jurisdiction to adjudicate Apanovitch's postconviction petition brought under R.C. 2953.23, we must vacate the trial court's judgment acquitting Apanovitch of vaginal rape. *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph three of the syllabus ("A judgment rendered by a court lacking subject matter jurisdiction is void *ab initio*"); *Van DeRyt v. Van DeRyt*, 6 Ohio St.2d 31, 36, 215 N.E.2d 698 (1966) ("A court has inherent power to vacate a void judgment because such an order simply recognizes the fact that the judgment was always a nullity"). We must also vacate the dismissal of the other rape count and the granting of a new trial, because those aspects of the trial court's judgment were based on the improper adjudication. And because we vacate the trial court's judgment, it necessarily follows that the court of appeals' judgment must also be vacated.

**{¶ 43}** The final issue for consideration is whether to remand the cause for further proceedings. The state joined Apanovitch in stipulating prior to the trial court's hearing in this case that "Rule 33 of the Ohio Rules of Criminal Procedure appl[ies] to this post-conviction proceeding" and that the trial court "shall refer to and rely on said rule * * * during its deliberations and judgment." In its posthearing brief filed in the trial court, the state at several different places discussed the standards for granting a motion for a new trial under Crim.R. 33 and also specifically urged that Apanovitch's "motion for new trial should be denied." However, the state now maintains that because Apanovitch did not file a motion for a new trial pursuant to Crim.R. 33, we do not need to remand this cause if we determine that the trial court lacked subject-matter jurisdiction to grant relief under the postconviction statutes. Moreover, the state argues that even if this court were to consider the Crim.R. 33 issue, Apanovitch did not demonstrate that he was "unavoidably prevented" from the discovery of the evidence upon which his claim is based under Crim.R. 33(B).

16

**{¶ 44}** We additionally note that our ability to squarely address any Crim.R. 33 issues is greatly complicated by the fact that the state did not appeal either the trial court's conclusion of law that Crim.R 33 "is applicable to this proceeding" or the trial court's reliance on Crim.R. 33 as part of its rationale for granting a new trial. Thus, given our vacation of the judgment and the unusual procedural history of this case, the trial court should have the first opportunity to determine whether it has the authority to take any action beyond dismissing Apanovitch's postconviction petition. We therefore remand the matter to the trial court for the limited purpose of determining if any further proceedings are necessary and, if so, resolving any remaining issues in a manner consistent with this opinion.

Judgment vacated

and cause remanded.

FRENCH, DEWINE, and DEGENARO, JJ., concur.

O'DONNELL, J., concurs in part and dissents in part, with an opinion joined by O'CONNOR, C.J.

KENNEDY, J., concurs in the judgment to vacate the trial court's judgment acquitting Apanovitch of vaginal rape because the trial court lacked subject-matter jurisdiction to adjudicate the postconviction petition, to vacate the trial court's dismissal of the other rape count and the granting of a new trial, and to vacate the judgment of the court of appeals, and dissents from the order to remand.

_____

**O'DONNELL, J., concurring in part and dissenting in part.**

**{¶ 45}** I concur with the majority's conclusion that the trial court lacked jurisdiction over Anthony Apanovitch's fourth petition for postconviction relief, but I dissent from its decision to "remand the matter to the trial court for the limited purpose of determining if any further proceedings are necessary and, if so, resolving any remaining issues in a manner consistent with this opinion." Majority opinion at ¶ 44. The majority concludes that its "ability to squarely address any Crim.R. 33

issues is greatly complicated" by the facts of this case and that "given our vacation of the judgment and the unusual procedural history of this case, the trial court should have the first opportunity to determine whether it has the authority to take any action beyond dismissing Apanovitch's postconviction petition." *Id.* Based on what? If the trial court had no jurisdiction to consider the fourth postconviction petition as the majority has concluded, then there is nothing pending before the trial court with respect to this appeal.

{¶ 46} If the trial court had no such jurisdiction, how can it determine "whether it has the authority to take any action * * *"? *Id.* At best, the majority opinion is confusing. This matter should be concluded.

{¶ 47} Crim.R. 33(A) states, "A new trial may be granted on motion of the defendant" for any of the reasons enumerated in the rule, and Crim.R. 33(B) states:

> Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, *shall be filed within fourteen days after the verdict was rendered*, * * * unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion *shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein*.
>
> Motions for new trial on account of newly discovered evidence shall be filed *within one hundred twenty days* after the day upon which the verdict was rendered * * *. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed *within seven days from an order of*

*the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.*

(Emphasis added.)

{¶ 48} In addition, the court in *State v. Stansberry*, 8th Dist. Cuyahoga No. 71004, 1997 WL 626063, *3 (Oct. 9, 1997), explained:

A trial court must first determine if a defendant has met his burden of establishing by clear and convincing proof that he was unavoidably prevented from filing his motion for a new trial within the statutory time limits. If that burden has been met but there has been an undue delay in filing the motion after the evidence was discovered, the trial court must determine if that delay was reasonable under the circumstances or that the defendant has adequately explained the reason for the delay.

{¶ 49} The deadlines set forth in Crim.R. 33(B) have long since passed, and therefore Apanovitch must seek leave to file a delayed motion for new trial, demonstrate by clear and convincing proof that he satisfies the unavoidable prevention requirement, and obtain an order from the trial court to that effect. But he has not filed any such motion. To the extent he seeks a new trial on account of newly discovered evidence, such as the results of the DNA testing by the coroner's office which he has admittedly known about since December 2008, he also carries the burden to demonstrate the undue delay in moving for leave to file a motion for new trial is reasonable. Notably, when Apanovitch filed his fourth petition for postconviction relief in March 2012, he did not request a determination regarding unavoidable prevention or reasonableness of delay for purposes of Crim.R. 33 nor did he request a new trial pursuant to that rule.

{¶ 50} Prior to the hearing on the fourth postconviction relief petition, the parties stipulated, "Rule 33 of the Ohio Rules of Criminal Procedure appl[ies] to this post-conviction proceeding and that the Court shall refer to and rely on said rule, in addition to all other applicable Ohio law, during its deliberations and judgment." However, Apanovitch failed to follow the requisite procedure to seek relief pursuant to that rule.

{¶ 51} Based on the trial court's consideration of postconviction relief, which we have concluded was error, the court acquitted Apanovitch of vaginal rape and then erroneously predicated its decisions to dismiss the remaining rape charge and grant a new trial as to the aggravated murder and aggravated burglary charges based on its erroneous acquittal.

{¶ 52} The majority somehow conflates what it recognizes as an error by the trial court in granting postconviction relief as an opportunity for the trial court to determine whether it has authority to take any action beyond dismissing the postconviction petition. This is not a method of availing Apanovitch of relief because Crim.R. 33 requires adherence to the prerequisites of the rule that Apanovitch and all other litigants are required to satisfy. And the trial court is required to assure compliance with the rule.

{¶ 53} Notably, a motion for new trial must be filed with the trial judge who presumably heard the witnesses testify and had an opportunity to assess their demeanor. "The discretionary decision to grant a motion for a new trial is an extraordinary measure which should be used only when the evidence presented weighs heavily in favor of the moving party." *State v. Luckett*, 144 Ohio App.3d 648, 655, 761 N.E.2d 105 (8th Dist.2001). "The deference shown to the trial court in such matters is premised in large part upon the familiarity of the trial court with the details of the case as a result of having presided over the actual trial." *Id.* And in reviewing the trial court's decision on such matters, " '[a] more searching inquiry is required' if the new trial is granted than if denied * * * because of 'the concern

that a judge's nullification of the jury's verdict may encroach on the jury's important fact-finding function.' " *Id.*, quoting *Tri Cty. Industries, Inc. v. Dist. of Columbia*, 200 F.3d 836, 840 (D.C.Cir.2000).

{¶ 54} This case, however, involves a rape and murder of a 33-year-old female that occurred more than 34 years ago. The judge who presided at that trial, former Justice Francis E. Sweeney, was familiar with the details of the case and in the best position to assess witness credibility and make the serious decision whether to nullify the jury's verdict, and he is now deceased. *See* https://www.supremecourt.ohio.gov/SCO/formerjustices/sweeney (accessed Nov. 8, 2018). Remanding this case for a different trial judge to consider taking action beyond dismissing Apanovitch's fourth postconviction petition makes a mockery of the jury trial that former Justice Sweeney conducted in this brutal killing that resulted in convictions that have been affirmed on appeal and upheld by this court and the federal courts in multiple postconviction proceedings. This is especially true given that no motion for a new trial was ever actually filed in this instance and that the time for filing such a motion has long since passed.

{¶ 55} It is time to finalize this judgment.

{¶ 56} I therefore concur in the judgment to vacate the ill-considered decision of the trial court to entertain a petition for postconviction relief that it should not have considered. But I would not cavalierly remand this case to the trial court to determine if it has authority to take action beyond dismissing the postconviction petition. Take action on what?

{¶ 57} No motions are pending in this matter and the majority rules today that the trial court had no jurisdiction to consider the postconviction petition. Hence, there is nothing before the trial court for it to consider. This court should bring this matter to a conclusion!

{¶ 58} To ensure the finality of this nearly 34-year-old judgment that has been affirmed on appeal and upheld by this court and the federal courts in several

postconviction proceedings, I would reverse the judgment of the appellate court and vacate the trial court's decision to entertain the fourth petition for postconviction relief. There is no reason for a remand of this matter whatsoever.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder and Katherine E. Mullin, Assistant Prosecuting Attorneys, for appellant.

Berkman, Gordon, Murray & DeVan, Mark R. DeVan, and William C. Livingston; and Crowell & Moring, L.L.P., Harry P. Cohen, and Michael K. Robles, for appellee.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Samuel C. Peterson, Deputy Solicitor, and Thomas E. Madden, Assistant Attorney General, urging reversal for amicus curiae, Ohio Attorney General.

_____