[Cite as *State v. Brown*, 2023-Ohio-2064.]

COURT OF APPEALS OF OHIO

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :
                                  No. 112027
    v.                           :

JOHNNY BROWN,                           :

    Defendant-Appellant.         :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 22, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-08-510427-B

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Katherine Mullin and Gregory J. Ochocki,
Assistant Prosecuting Attorneys, *for appellee.*

Mary Catherine Corrigan and Allison F. Hibbard, *for
appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1}  Johnny Brown appeals the denial of his third motion to withdraw his

guilty plea under Crim.R. 32.1, all of which were filed following his 2008 convictions

stemming from his participation in causing the death of Charles Goodwin.  Brown

is in the midst of serving a 17 years-to-life aggregate term of imprisonment for the felony murder conviction in violation of R.C. 2903.02(B) (providing that "no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence") and for his having committed that offense while on probation or under community-control sanctions. For the following reasons, the trial court's decision is affirmed.

{¶ 2} Under Crim.R. 32.1, "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 3} Brown, in attempting to demonstrate his need to withdraw a guilty plea, proffers two affidavits proclaiming his innocence in causing the death of Goodwin, who was beaten to death during an altercation with Brown and others. Brown makes no effort to otherwise fill in the factual gaps. He instead solely relies on the contents of his postsentence motion to withdraw his plea. The transcript of the change-of-plea colloquy is included within the record, but that lacks a description of the events leading to Goodwin's death.[1]

---

[1] It is not this court's responsibility to scour the record to find information relevant to the appellate arguments. *Mayfair Village Condominium Owners Assn. v. Grynko*, 8th Dist. Cuyahoga No. 99264, 2013-Ohio-2100, ¶ 6, citing *Nob Hill E. Condominium Assn. v. Grundstein*, 8th Dist. Cuyahoga No. 95919, 2011-Ohio-2552, ¶ 11; *Concrete Creations & Landscape Design LLC v. Wilkinson*, 7th Dist. Carroll No. 20 CA 0946, 2021-Ohio-2508, ¶ 52. App.R. 16(A)(6) requires the parties to identify the portion of the record establishing the information relevant to the arguments presented. Thus, and although this should go without saying, our conclusion with respect to the state of the record is a direct result of the manner in which Brown presented it.

{¶ 4} In the first affidavit, the mother of Brown's child, Channel Burns, who was present during the murder of Goodwin, claims that Goodwin punched Brown and then other "people" jumped on Goodwin, who was "basically unconscious" before Brown got back to his feet. Another defendant, Paris Moore, supposedly put Goodwin in a headlock, causing Goodwin to pass out and then he, not Brown, stomped on Goodwin's head. Those purported facts are of little consequence in light of the limited record. Brown has not identified any portion of the appellate record containing evidence of how Goodwin's death was brought about, although from Burns's statement, the state's likely theory can be surmised. Burns now remembers that Brown "exclaimed 'child, you're over-doing it'" during the altercation. To whom that statement was directed is not clear. And importantly, she did not disclose whether that statement was made before or after the beating ended.

{¶ 5} The second affidavit is from Ralph Brown, Brown's brother. Ralph evidently pleaded guilty to involuntary manslaughter for his involvement in Goodwin's murder. Ralph reiterated that Goodwin threw the first punch before "other people" hit or punched Goodwin. Ralph was unable to provide information as to Brown's conduct after the first punch other than "I never saw my brother stomp on [Goodwin's] head[,]" before Ralph ran from the scene, but he did "not believe that [Brown] stomped on [Goodwin's] head."

{¶ 6} The fact that Brown was punched first or that other people were involved in the attack on Goodwin is far from novel. According to the transcript of the sentencing hearing, Brown's trial counsel told the trial court: "[Brown] initially

started off with conversation [with Goodwin] and then [Brown] was punched and that set the whole matter into play. [Brown] was the first one that was hit that night, [and] unfortunately the matter clearly went too far[;] Mr. [Goodwin] lost his life." Tr. 18:15-22. Thus, Brown's counsel was aware of Brown's version of events. The affidavits provide no new insight. Further, according to Brown's trial counsel, "I don't think he was the main player[,] but I think he was certainly part of that cast of individuals that have come forth and pled guilty to various offenses." Tr. 19:2-5. In other words, Brown's counsel believed, ostensibly from his conversations with Brown, that "other people" were involved in the killing but Brown was criminally responsible for his conduct that in part brought about Goodwin's death.

{¶ 7} In this appeal, the parties focus their arguments on the nuances of belated or successive postsentence motions to withdraw guilty pleas involving the continued application of *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 378 N.E.2d 162 (1978), in light of *State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, and *State ex rel. Davis v. Janas*, 160 Ohio St.3d 187, 2020-Ohio-1462, 155 N.E.3d 822, ¶ 11, fn. 3. In *Special Prosecutors*, the Ohio Supreme Court unambiguously held that "Crim. R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea subsequent to an appeal and an affirmance by the appellate court." *Id.* at ¶ 97. In *Janas*, after describing *Special Prosecutors* as a general rule that the trial court "loses jurisdiction" to modify its judgment following a direct appeal, the Ohio Supreme Court concluded that *Special Prosecutors* also does not

apply to any motion filed under the criminal rules or permitted by statute, including Crim.R. 32.1 motions. *Janas* at ¶ 11, fn. 3. According to the Ohio Supreme Court, "*Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions permitted by the Ohio Rules of Criminal Procedure," which expressly includes Crim.R. 32.1. *Id.,* citing *Davis.*

{¶ 8} *Special Prosecutors,* as it relates to finality following an appellate affirmance of convictions, was limited to the proposition that a trial court loses *continuing* jurisdiction over postconviction proceedings following an appellate affirmance, even if that continuing jurisdiction is established by a criminal rule. In general, a trial court loses jurisdiction to modify a conviction upon issuing the final entry of conviction, *see State v. Gilbert*, 143 Ohio St.3d 150, 2014-Ohio-4562, 35 N.E.3d 493, ¶ 3; therefore, *Special Prosecutors* stood for the proposition that a trial court is divested of its *continuing* jurisdiction to review postsentence motions following the appellate court's affirmance of a conviction in a direct appeal. This distinction was overlooked in *Janas*, but it impacts the viability of *Special Prosecutors* on the finality question.

{¶ 9} A trial court's continuing jurisdiction to act in postconviction proceedings is limited. *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 30; *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 23; *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19. There must be a jurisdictional basis for the trial court to act or to decide a postconviction motion following the final entry of conviction.

*State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 38-39, 41; *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, 137 N.E.3d 1151. If a trial court lacks continuing jurisdiction to consider postconviction motions, "any ruling on such a motion is a nullity." *State ex rel. Dobson v. Handwork*, 159 Ohio St.3d 442, 2020-Ohio-1069, 151 N.E.3d 613, ¶ 16, citing *State v. Dix*, 8th Dist. Cuyahoga No. 101007, 2014-Ohio-3330, ¶ 3; *State v. Ford*, 9th Dist. Summit No. 26466, 2012-Ohio-5050, ¶ 8-10; *State v. Wilson*, 10th Dist. Franklin Nos. 05AP-939, 05AP-940, and 05AP-941, 2006-Ohio-2750, ¶ 9. As a result, the only postconviction motions a trial court is authorized to consider are those expressly provided by a criminal rule or statute. *See generally Apanovitch*.

{¶ 10} *Special Prosecutors* once concluded that the trial court is divested of that continuing jurisdiction to consider a motion filed under Crim.R. 32.1 after the appellate court affirms a final conviction because the rule does not authorize a trial court to take actions inconsistent with that appellate affirmance. *Special Prosecutors*, 55 Ohio St.2d 94, 378 N.E.2d 162, at 97. That presented an additional hurdle to a trial court's postconviction authority to act. But after the slow walk-back of that general rule with respect to other motions provided for under the criminal rules, *Special Prosecutors* no longer applies to Crim.R. 32.1 motions. *See Janas*. The only motions a trial court possesses continuing jurisdiction to consider, following the final entry of conviction, arise under a statute or the Criminal Rules — unless the motion is to vacate a void judgment. S*ee Apanovitch* at ¶ 38-39, 41. And that continuing jurisdiction to consider the statutory or rule-based motion is no

longer impeded by an appellate decision affirming the conviction. *Janas,* 160 Ohio St.3d 187, 2020-Ohio-1462, 155 N.E.3d 822, at ¶ 11, fn. 3.

{¶ 11} This district's continued adherence to *Special Prosecutors* in disposing of any postconviction motions authorized by statute or the criminal rules is questionable in light of the overlooked conclusions reached in *Janas*. *See, e.g., State v. Lewis*, 8th Dist. Cuyahoga No. 110448, 2022-Ohio-70, ¶ 12;[2] *State v. Simmons*, 8th Dist. Cuyahoga No. 109786, 2021-Ohio-1656, ¶ 21.

{¶ 12} Notwithstanding, Brown has not demonstrated an entitlement to relief.

{¶ 13} In order to withdraw a plea of guilty after the issuance of the final entry of conviction, the offender "'has the burden of establishing the existence of manifest injustice.'" *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 14, quoting *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. "[M]anifest injustice" is defined as a "'clear or openly unjust act,' and relates to a fundamental flaw in the plea proceedings resulting in a 'miscarriage of justice.'" *Id.,* citing *State v. Tekulve*, 188 Ohio App.3d 792, 2010-Ohio-3604, 936 N.E.2d 1030, ¶ 7 (1st Dist.), and *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998). Although there is no set deadline for filing the motion to withdraw a plea after a sentence is imposed, any "'undue delay between the occurrence of the alleged cause for withdrawal and the filing of

---

[2] Unlike in this appeal, the parties did not brief the impact of *Janas* in *Lewis*.

the motion is a factor adversely affecting the credibility of the movant and militating against the granting of the motion.'" *Id.* at ¶ 15, quoting *Smith* at 264.

{¶ 14} Brown has not demonstrated an abuse of discretion based on the arguments he presents. *See id.*, citing *Smith* at paragraph two of the syllabus, and *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 32. As the state aptly observes, it has long been recognized that "[t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case * * *." *Id. Brady* is instructive.

{¶ 15} Brown's twofold claim in this appeal starts with his attempt to demonstrate that his trial counsel rendered ineffective assistance by failing to investigate "exculpatory" witnesses, and that but for that failure to investigate, he would not have pleaded guilty. According to Brown, "[t]here can truly be no question that had [he] known about [Burns's and Ralph's] testimony, he would have refused this plea and insisted upon proceeding to trial." For the sake of the ineffective assistance of counsel claim, we will overlook the fact that both affiants expressly state that they purposely withheld themselves from Brown's defense: Ralph because he exercised his right to remain silent in anticipation of his own trial

based on the underlying events,[3] and Burns because she feared being implicated in the murder given her presence and relationship with the Brown brothers.[4]

{¶ 16} Even if Brown were given every benefit of every doubt regarding his latest attempt to withdraw his guilty plea, the delay between his motion and the occurrence of the alleged cause for the withdrawal is too great.

{¶ 17} Brown's latest motion is entirely based on information that he had available at the time of the original conviction in 2008. The affiants both have personal relationships with Brown, and both were present with Brown on the night of the murder — information Brown would have been aware of at the time of the original proceeding and the resulting guilty plea. *See, e.g., State v. Mitchell*, 8th Dist. Cuyahoga No. 109634, 2021-Ohio-210, ¶ 7 (defendant was aware of the issues cited as the basis for postconviction relief, and therefore, he could not demonstrate that his plea was anything but knowing, voluntary, and intelligent). Brown does not claim to have been incapacitated at the time he participated in Goodwin's killing to such an extent that he was unaware of Ralph's and Burns's presence. Further, the alleged facts contained in the affidavits would have been known to him since they relate to his point of view and his trial counsel demonstrated an understanding of Brown's version of the altercation leading to Goodwin's death.

---

[3] "While my brother was facing his charges, I never spoke to * * * his attorney[,] about what I saw. I was afraid to tell the truth in 2008 because I was facing my own charges, and had a right to remain silent." Affidavit of Ralph Brown at ¶ 4, 5.

[4] "I never was willing to testify on behalf of Johnny because it seemed like everyone was being charged with murder, and I was terrified I would be as well." Affidavit of Channel Burns at ¶ 13.

{¶ 18} The time for seeking to withdraw his guilty plea based on Brown's version of events, which directly conflicts with his unreserved[5] admission of guilt to the conduct leading to Goodwin's death, has long-since passed. The undue delay in attempting to withdraw a guilty plea based on extrinsic evidence known to Brown at the time of his admission of guilt militates against the credibility of his request to declare the existence of a manifest injustice.

{¶ 19} It cannot be concluded that the trial court abused its discretion in denying the third postsentence motion to withdraw the guilty plea. The decision of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

---

[5] *See North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (permitting courts to accept guilty pleas where defendants profess innocence).

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR